PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

E. WISTAR WILSON (CABN 324705)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7000
    FAX: (415) 436-7234
    Wistar.Wilson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BELLA PHOENIX, <br><br> Defendant. | CASE NO. 3:24-CR-00310-CRB <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Date: April 16, 2025 <br> Court: Hon. Charles Breyer |

    Defendant Bella Phoenix pleaded guilty on March 26, 2025 to two misdemeanor counts of Employee of the United States Converting Property of Another, in violation of 18 U.S.C. § 654, pursuant to a plea agreement with the U.S. Attorney's Office for the Northern District of California under Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B). Dkt. 26. Ms. Pheonix is scheduled to be sentenced on April 16, 2025 at 1:30 p.m. before this Court.

    The United States submits this sentencing memorandum to assist the Court in determining the appropriate sentence in this case. In fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a), the Court must consider a variety of factors. These factors include, among others, the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to promote respect for the

law, provide just punishment for the offense, and deter criminal conduct.  *See* 18 U.S.C § 3553(a).

For the reasons articulated below, the Government recommends that the Court sentence Ms. Pheonix to three years of probation with special conditions described below.  This sentence is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

## I.   THE OFFENSE CONDUCT

On two occasions in January 2021, while working as a Program Support Assistant in the Decedent Affairs Office in San Francisco, California, for the San Francisco Veterans Affairs Health Care System ("SFVAHCS"), Ms. Phoenix charged the family members of deceased veterans for funeral expenses when no payment was required, and then pocketed the money for herself.

As described in the Plea Agreement, Dkt. 26, the Decedent Affairs Office coordinates burial and funeral services for recently deceased veterans who have died at the SFVAHCS or who did not die at a SFVAHCS facility but whose families cannot afford burial services.  *Id.* ¶ 2.  The Decedent Affairs Office does not collect payment from families of deceased veterans; rather, employees of the Decedent Affairs Office send a form to the fiscal department, which then makes the payment to the funeral home for burial and funeral services.  *Id.*

In January 2021, the son ("A.D.") of a deceased veteran contacted the Decedent Affairs Office for assistance with the funeral of his recently deceased father.  *Id.*  Ms. Phoenix met with A.D. and his brother at the Decedent Affairs Office, told them that the cost of their father's burial would be $790, and then used her own credit card reader—the Decedent Affairs Office does not have one—to swipe A.D.'s credit card.  *Id.*  When the card was declined, Ms. Phoenix offered to come to A.D.'s home to collect the money.  *Id.*  The next day, Ms. Phoenix went to A.D.'s home and collected $800 in cash.  *Id.*  She subsequently emailed A.D. a fabricated receipt that claimed the payment was for "Vet Funeral Services."  *Id.*

Also in January 2021, Ms. Phoenix called the relative ("E.C.") of another veteran and told her that it would be a good idea for her to pay for the funeral expenses for her relative—before the relative died—to avoid delays.  *Id.*  Ms. Phoenix persuaded E.C. to wire $3,860, purportedly for E.C.'s relative's burial expenses, to a Bank of America bank account.  *Id.*  Unbeknownst to E.C., that account belonged to Ms. Phoenix under her previous legal name, *id.*, which Ms. Phoenix claimed was the name of the

undertaker who would handle the cremation.

## II.   THE GUIDELINES CALCULATION

The government agrees with the U.S. Sentencing Guidelines ("Guidelines") calculation set forth in the Plea Agreement, which results in an Adjusted Offense Level of 2. *See* Dkt. 26 ¶ 7. The Guidelines range for an Offense Level of 2, for an individual in Criminal History Category I, is 0 – 6 months' imprisonment. Because the Guidelines range falls within Zone A of the Guidelines' Sentencing Table, the Guidelines contemplate a term of Probation as an alternative to imprisonment. *See* U.S.S.G. § 5B1.1(a)(1). The maximum Probationary term for the instant offenses is five years. *See* 18 U.S.C. § 3561(c)(2).

## III.   THE GOVERNMENT'S RECOMMENDATION

The government recommends that the Court sentence Ms. Phoenix to three years of Probation with the special conditions that the defendant not open any new account or credit line without prior approval, attend mental health counseling and/or therapy, and maintain employment. Such a sentence would be sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a)—including promoting respect for the law, deterrence, and protecting the public from further crimes of the defendant—while accounting for Ms. Phoenix's history and characteristics.

Here, although the dollar amounts at issue were not large, the nature of Ms. Phoenix's conduct was serious. The mission of the U.S. Department of Veterans Affairs is to care for individuals who have dedicated part of their lives in service to the United States as members of its military, as well their families, caregivers, and survivors. Ms. Phoenix used her position as an employee of the U.S. Department of Veterans Affairs' Decedent Affairs Office—an office tasked with providing assistance during a difficult and painful time for a deceased veteran's loved ones—to deceive veterans' relatives into providing her money for her personal gain. The Court's sentence should reflect appropriately the seriousness of Ms. Phoenix's decision to exploit such a vulnerable situation, and the corresponding undermining of the public trust that it likely engendered. A three-year term of Probation would accomplish that objective.

Although Ms. Phoenix does not have any Criminal History points under the Guidelines, her criminal history record suggests that probationary supervision is necessary. Ms. Phoenix's record

includes arrests for (1) "Exhibit Deadly Weapon: Not Firearm" and "Threaten Crime W/ Intent to Terrorize" in 2024—while the instant case was pending; (2) "Fail to ID Fugitive Intent Give False Info" in 2010; (3) "Fraud-Insuff Funds Check Iss/Obt Prop W/ Check," and "FTA Iss Obt Prop w Check" in 2007; and (4) "Conspiracy to Commit a Felony," "Theft by Deception," Computer Theft," and "Attempting or Conspiring to Commit Financial Identity Fraud," in 2007. She has misdemeanor convictions for driving with a suspended or revoked license (in 2007 and 2008) and for failing to have motor vehicle liability insurance (in 2005). Although most of the aforementioned arrests occurred many years ago—and are arrests rather than convictions—several of them are of a nature that is concerning given the instant offense conduct. The Court's sentence should account for this history and for Ms. Phoenix's other characteristics; the government understands from defense counsel that Ms. Phoenix has experienced difficult personal circumstances that include financial hardship and domestic violence.

A sentence of three years' probation, during which Ms. Phoenix would be supervised and subject to the aforementioned conditions, would balance appropriately the need to promote respect for the law and deter Ms. Phoenix from future criminal conduct while accounting for the nature and circumstances of the offense and Ms. Phoenix's history and personal characteristics.

### IV.   VICTIM IMPACT STATEMENTS AND RESTITUTION

As of the date of this filing, the government has not received victim impact statements or notice that one or more victim impact statements should be anticipated. The government has used its Victim Notification System, individual phone outreach by a victim specialist, and communication through a Special Agent of the Veterans Affairs—Office of the Inspector General, to notify the victims of their right to submit victim impact statements. The government requests that the Court order restitution to the victim recipients and in the amounts listed in paragraph 9 of the Plea Agreement. *See* Dkt. 26.

### V.   CONCLUSION

For the reasons set forth above, a sentence of three years' Probation with the special conditions that the defendant not open any new account or credit line without prior approval, attend mental health counseling and/or therapy, and maintain employment, would be sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a). The government requests that the //

1  Court sentence Ms. Phoenix accordingly.

2

3  DATED: April 9, 2025                              Respectfully submitted,

4                                                    PATRICK D. ROBBINS
                                                     Acting United States Attorney
5

6                                                     _/s/ E. Wistar Wilson_____
                                                     E. WISTAR WILSON
7                                                    Assistant United States Attorney